IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                                                 3:05cr54/LAC
                                                                    3:07cv6/LAC/MD

FELTON ROBINSON

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 (doc. 32).  The government has filed a response (doc. 36) and the defendant has filed a reply (doc. 38).  Defendant was ordered to file a supplemental affidavit (doc. 41), which he has done. (Doc. 44).  The court held an evidentiary hearing on August 13, 2007, limited to the issue of counsel's failure to file an appeal.  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a two count indictment with conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectible amount of cocaine and possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine on a date certain.  (Doc. 1).

Defendant, represented by Eric Duane Stevenson, signed a written plea and cooperation agreement on April 26, 2006 pursuant to which he agreed to plead guilty to count one of the indictment.  (Doc. 26).  The agreement noted that defendant faced a

minimum mandatory term of ten years imprisonment, with a maximum penalty of life imprisonment, a fine of up to $4,000,000, a five year term of supervised release and a $100 special monetary assessment. Defendant agreed that were the case to go to trial that the government could present evidence to support the charge beyond a reasonable doubt.

The plea proceeding was unremarkable. Defendant indicated that he understood his rights, that he had discussed his rights with counsel, and that he understood the charges against him. He made some corrections to the facts as stated by the government, primarily volunteering that the amount of cocaine was inaccurate and that it had been six kilograms of cocaine rather than the seven noted by the government. (Doc. 39 at 10-11). The penalties he faced were explained to him again, along with the fact that no one could predict for the defendant what the actual sentence would be in accordance with the guidelines. (Doc. 39 at 12-13). Defendant indicated he understood the plea agreement and that no promises had been made to him other than those contained in the plea agreement. (Doc. 39 at 14-15). The court emphasized that while the agreement afforded the defendant the opportunity to cooperate, there was no guarantee that he would receive a sentence below the minimum mandatory or below the guidelines range. (Doc. 39 at 16). Finally, defendant indicated he had not been threatened or forced or pressured or intimidated in any way to enter the agreement, that he had had sufficient time to discuss his case with counsel and that he was satisfied with counsel's representation of him. (Doc. 39 at 17-18).

The PSR held defendant accountable for ten kilograms of cocaine. His base offense level was 32.[1] With a three level downward adjustment for acceptance of responsibility, his total offense level was 29. Defendant had three criminal history points due to 1975 convictions for bank robbery and subsequent parole violations, and thus had a criminal history category of II. The applicable guidelines range was 97 to 121 months.

---

[1] The base offense level for at least five kilograms but less than 15 kilograms of cocaine powder is 32.

Case No: 3:05cr54/LAC; 3:07cv6/LAC/MD

At sentencing, there were no substantive objections to the PSR. Rather, the defendant expressed contrition and freely admitted his participation in the conspiracy. (Doc. 40 at 4-9). The court noted that the last 30 years of defendant's life had been quite commendable, and noted that this would be taken into account should a Rule 35 motion be filed. It also noted that for its purpose at sentencing, it had very little choice. The defendant was sentenced to the mandatory minimum required by statute, 120 months imprisonment. (Doc. 40 at 10). Defendant was notified of his right to appeal, that counsel was appointed to represent him, and the court added that it always recommended that notice to counsel with respect to an appeal be made in writing. (Doc. 40 at 11). No appeal was filed.

In the present motion, defendant separates his claims into four grounds for relief. He claims that counsel was constitutionally ineffective because he failed to file an appeal, that the imposition of the mandatory minimum sentence was improper in light of his criminal history and other factors, that the court should not have used his prior conviction to enhance his sentence in light of both the remoteness in time of this conviction and defendant's remorse, and lastly he appears to raise a challenge to the quantity of drugs attributed to him.

## II. LEGAL ANALYSIS

### A. General Standards

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete

miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice."  *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

    B.   Defendant's specific claims

        1.   Failure to file an Appeal

Defendant first contends that counsel was constitutionally ineffective because he failed to file an appeal.  It is axiomatic that if a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).  However, in cases where a defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, the question whether counsel has performed deficiently by not filing a notice of appeal is analyzed as follows:

> [T]he question . . . is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal.  We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes.  If counsel has consulted with the defendant, the

> question of deficient performance is easily answered; Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal. *See supra* 1034-1035.  If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance.

*Flores-Ortega,* 528 U.S. at 478, 120 S.Ct. at 1035.  *Thompson v. United States*, 481 F.3d 1297, 2007 WL 824118 (11th Cir. 2007).  The *Flores-Ortega* Court rejected a bright-line rule that counsel must always consult with a defendant regarding an appeal:

> We instead hold that counsel has a constitutionally-imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.  In making this determination, courts must take into account all the information counsel knew or should have known . . . . Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.

*Id.,* 528 U.S. at 480, 120 S.Ct. at 1036.  *Thompson v. United States,* 481 F.3d 1297, 2007 WL 824118 (11th Cir. 2007).

In cases where a defendant has not specifically instructed his counsel to file a notice of appeal, a *per se* prejudice rule does not apply, rather, a defendant must demonstrate a reasonable probability exists that, but for counsel's deficient performance, he would have timely appealed. *Flores-Ortega,* 120 S.Ct. at 1038, 1040; *Thompson v. United States*, 481 F.3d 1297, 2007 WL 824118 (11th Cir. 2007).  "Evidence that there were nonfrivolous grounds for appeal or that the defendant in question promptly expressed a desire to appeal will often be highly relevant in making this determination."  *Flores-Ortega*, 120 S.Ct. at 1039.  However, "[b]ecause a direct appeal of a federal conviction is a matter of right, see *Rodriquez v. United States*, 395 U.S. 327, 329-330, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969), we determine whether a defendant has shown that there is a reasonable probability that he would have appealed without regard to the putative merits of such an appeal."

*Thompson v. United States,* 481 F.3d 1297, 2007 WL 824118 (11th Cir. 2007) (citing *Flores-Ortega*, 528 U.S. at 485-86, 120 S.Ct. 1029; *Gomez-Diaz,* 433 F.3d at 793).

Defendant contends in his motion that counsel failed to file an appeal for him "in spite of his request on the day of sentencing." He asserts that he wrote counsel a letter inquiring about the status of his appeal, to which counsel never responded, and that his wife's calls to counsel went unreturned.

The government asserts that defendant's position as expressed in his motion appears contrary to his expression of remorse and contrition at sentencing, his desire to "quickly" enter a guilty plea and do everything he could to "make amends," his desire to cooperate with the government, the fact that there were no appealable issues, and the fact that the sentence imposed was the minimum sentence he could receive under the statute. (Doc. 40 at 4-5).

Counsel submitted an affidavit in which he states that as part of his representation, he consulted with his client on all aspects of his case, including but not limited to, whether he should file an appeal. (Doc. 36, att. 1 at 1). Counsel avers that he told the defendant even before sentencing that he did not believe there were any appealable issues, but if he discovered any, he would notify the defendant immediately. (*Id.*) After sentencing counsel stated he again advised his client that he did not believe there were any appealable issues but told the defendant to contact him if he wished counsel to file such a notice. (*Id.* at 2). Counsel noted that he received a letter from the defendant shortly after sentencing, but that the letter did not contain any request for counsel to file an appeal, any inquiry about an appeal, or any directions or requests regarding further representation. (*Id*. at 2, att.) Counsel states "at no time did Mr. Robinson ever request that I file an appeal, and had he done so, I would have done as he directed even if I did not find any merit to the appeal." (*Id.*). With respect to defendant's assertion about his wife's calls to counsel's office, Mr. Stevenson explains that his office keeps electronic records of messages and phone logs, and he has no records of any phone calls from defendant's wife after sentencing nor independent recollection of such. (*Id.*)

In his reply, defendant states that after reading counsel's affidavit, he concludes that counsel simply misunderstood his request for an appeal after sentencing or that counsel did not hear his request. (Doc. 38 at 1). The court directed defendant to file an affidavit, which he did. (Doc. 44). Based on the contents of the affidavit, which clarify and confirm the defendant's statement that he did in fact ask counsel to file an appeal after sentencing, the court scheduled an evidentiary hearing.

At this hearing, the defendant testified that counsel came to see him at the jail approximately a month before his sentencing to discuss the contents of the PSR. During that meeting, defendant stated, they talked about his rights, including the fact that he had a right to appeal. Defendant asked counsel what his chances were, and counsel told him words to the effect that there was no harm in filing an appeal, that defendant had nothing to lose. Counsel told defendant to "shoot him a kite" within ten days of sentencing if he wanted counsel to appeal. At that meeting, defendant was already aware of the sentence he faced because of the application of the statutory mandatory minimum. He testified that he asked counsel if he would represent him on appeal, and told his attorney that he wanted to appeal, although no grounds for appeal were discussed at that time. In defendant's mind, according to his testimony, he had expressed clearly to his lawyer even before sentencing that he wished to appeal.

Defendant testified that he and his attorney had a brief conversation after sentencing wherein counsel explained what the judge had said about his sentence. Counsel reiterated that defendant should send him a letter within ten days if he wanted to appeal. Defendant testified that as he was being ushered out of the courtroom he told his attorney words to the effect of "go ahead and put in the paperwork," meaning the paperwork for an appeal. Six days later, defendant wrote counsel a letter in which he did not mention an appeal. He stated in the letter that he would be checking up on counsel from time to time. At the hearing he explained that by this he meant checking on the status of his appeal.

Defendant testified that after having heard nothing about the status of his appeal, he wrote counsel another letter in about a month, but that he received no response to this

letter. He then wrote a letter to the judge, and received a letter back from the clerk of court instructing him that he was not permitted to communicate with the court via letter, that he needed to file a motion. Defendant ultimately obtained a copy of his criminal docket sheet and learned that an appeal had not been filed.

On cross examination, defendant testified that before meeting with counsel for the first time he had decided he wanted to cooperate to try to help himself out. He stated that counsel was thorough in his explanation of the judicial process including how cooperation could work. Defendant recalled that at his rearraignment the judge said that if his plea were accepted, he could appeal only his sentence, not the question of his guilt, and he recalled admitting that the offense conduct involved six kilograms of cocaine, which was above the threshold for the application of the statutory mandatory minimum. He concurred that there were no substantive errors in the PSR, and he recalled counsel telling him that there were no appealable issues, even though counsel agreed that the sentence defendant faced was very harsh under the circumstances. Defendant said that his attorney explained the operation of the 120 month minimum mandatory to the defendant, making clear that the judge was not statutorily authorized to go below that sentence absent a motion for substantial assistance. Defendant indicated that even though the sentence was statutorily mandated, he wanted to appeal because he thought it was a harsh sentence and also he thought he could be granted leniency because of family hardships. He recalled the district judge telling him to advise counsel in writing if he wanted to appeal, and on re-direct stated that because he had already told counsel twice that he wanted to appeal, he did not see the need to do so.

Former defense counsel Eric Stevenson was the only other witness to testify at the evidentiary hearing.[2] Mr. Stevenson stated that he met with defendant approximately four times, and that from the beginning defendant indicated his desire to cooperate with the government and get his life back together. At approximately their third meeting, they went over the defendant's PSR, paragraph by paragraph. They discussed the fact that there

---

[2] Counsel who was appointed to represent defendant for the evidentiary hearing mentioned that his attempts to contact defendant's estranged wife were unsuccessful.

*Case No: 3:05cr54/LAC; 3:07cv6/LAC/MD*

were no appealable issues, and that the only errors they identified therein were "ministerial." Counsel also explained the fact that the guidelines were essentially moot in defendant's case due to the application of the statutory mandatory minimum. Defendant asked counsel whether he would get a Rule 35 motion, which counsel could not answer, and whether there were any appealable issues, to which counsel responded that at that point there were not. Counsel testified that he told his client that if there were errors in the manner in which the sentence was handed down, then there could be an issue to appeal. Mr. Stevenson testified that defendant understood what he was told and consistently seemed disappointed about the lack of appealable issues. Defendant asked why he could not get a probationary sentence particularly since counsel thought he could succeed on probation, but counsel again explained the application of the statutory mandatory minimum. Counsel stated that he walked defendant to the door leading out of the courtroom after sentencing and again told his client that there were no appealable issues. He reiterated to the defendant that if he decided he wanted an appeal filed, he should write to counsel within ten days. Counsel swore that although his client was very somber after sentencing, defendant never told him to go ahead and file the appeal, or the paperwork, or any words to that effect. Counsel denied having received any calls or emails from the defendant's family and indicated that he had even reviewed phone records at his law firm. When asked about the letter he received from defendant shortly after sentencing, he explained that he was not surprised by the tone of the letter, because they had developed a rapport. Counsel repeatedly described the defendant as a nice and personable man, noting that defendant had shared recipes with him and told counsel he would be praying for him. Therefore, Mr. Stevenson viewed the letter, which did not mention any request for an appeal, as a continuation of that friendly interaction between them.

On cross-examination, counsel admitted that he had told defendant it would not hurt to appeal,[3] but that he had also consistently told his client that there were no grounds to appeal. Counsel stated he had no recollection of defendant ever telling him that he wanted

---

[3] In light of the defendant's expressed desire to cooperate with the government, this statement may or may not have been accurate. Regardless, it is ultimately not dispositive of the issue at hand.

*Case No: 3:05cr54/LAC; 3:07cv6/LAC/MD*

to appeal, whether before sentencing or after. He said that the defendant was waiting for his lawyer to advise him as to whether there were appealable issues, and that during their conversations both immediately before and immediately after sentencing, counsel told him that nothing had changed.

Counsel testified that defendant's demeanor always reflected disappointment when they talked about the fact that there was nothing to appeal. He said that while his client consistently expressed his belief that the sentence was harsh, a sentiment with which counsel did not disagree, defendant never told counsel to appeal. He reiterated that he thought that the letter he received from defendant soon after sentencing was defendant's way of keeping in touch, and he denied having received a second letter in which defendant asked about his appeal or any contact from defendant's wife.

After hearing the testimony from both the defendant and his attorney, this court is called upon to make a credibility determination. While the court did not find defendant's testimony to be entirely unworthy of belief, it finds the testimony of counsel to be more believable. Clearly, there was a strong attorney-client relationship, and counsel personally felt compassion for the defendant. Defendant had admitted his involvement with a quantity of drugs sufficient to warrant application of the ten year statutory mandatory minimum. In light of this, and the fact that no 5K1 motion was filed, there was simply no lesser sentence that the defendant could have received.[4] Both defendant and counsel testified that counsel consulted with his client about the possibility of appeal and the lack of appealable issues more than once during the proceedings. No appealable issues were or have since been identified by either counsel or the defendant. And, defendant's attorney had no reason not to perform the ministerial act of filing an appeal had defendant made such a request. Therefore, the court credits the testimony of Mr. Stevenson, that no such request was made, and the court finds that counsel was not constitutionally ineffective for his failure to file an appeal.

---

[4] He could have received a sentence of 121 months, as the applicable guidelines range became 120 to 121 months due to the application of the statutory mandatory minimum.

*Case No: 3:05cr54/LAC; 3:07cv6/LAC/MD*

Also within this ground for relief, defendant appears to contend that counsel promised him that he would get credit for his "immediate acceptance of responsibility." Defendant stated at sentencing that he accepted responsibility "like within the first five minutes of my attorney visit." (Doc. 40 at 4). To the extent defendant contends any promises were made to him, as noted above, defendant stated under oath at the rearraignment that no promises had been made to him other than those contained in the plea agreement. He also affirmed that he understood that while the agreement afforded him the opportunity to cooperate, there was no guarantee that he would receive a sentence below the minimum mandatory or below the guidelines range. (Doc. 39 at 14-16). The court found the defendant's plea to be freely, voluntarily and understandably made. (Doc. 39 at 18). A defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629. They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id.; see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979)); *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). "[i]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986). Defendant has presented no "compelling evidence" to show that the statements he made at the change of plea proceeding are untrustworthy. The fact that the application of the statutory minimum mandatory precluded him from receiving a guidelines benefit for acceptance of responsibility does not render his plea invalid.

*Case No: 3:05cr54/LAC; 3:07cv6/LAC/MD*

## 2. Guidelines vs. Statutory Sentence

Defendant's second and third grounds for relief contain some overlap. He appears to claim in ground two that he should have been sentenced in accordance with the guidelines instead of the statutory minimum mandatory due to the application of the "safety valve." Section 5C1.2 of the Sentencing Guidelines, which implements 18 U.S.C. § 3553(f) and is commonly known as the "safety valve" provision, permits courts to disregard the applicability of statutory mandatory minimum sentences in cases in which certain criteria are met. *See United States v. Milkintas,* 470 F.3d 1339, 1344 (11th Cir. 2006); *United States v. Simpson*, 228 F.2d 1294, 1304 (11th Cir. 2000) (applying 18 U.S.C. § 3553(f)); *United States v. Brownlee,* 204 F.3d 1302 (11th Cir. 2000); *United States v. Bravo,* 203 F.3d 778, 781 (11th Cir. 2000). Section 2D1.1(b)(9) provides that defendants who meet the criteria of the safety valve provision shall have their offense level decreased by two levels. See *Milkintas,* 470 F.3d at 1344; *United States v. Camacho*, 261 F.3d 1071, 1073 (11th Cir. 2001); *United States v. Anderson*, 200 F.3d 1344, 1347 (11th Cir. 2000). The five criteria are:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a

determination by the court that the defendant has complied with this requirement.

§ 5C1.2 U.S.S.G. In this case, the defendant fails to qualify for the application of the safety valve because he had more than one criminal history point.

Defendant pleaded guilty to two counts of bank robbery in the Northern District of Georgia on July 7, 1975. (PSR ¶ 44). He was sentenced to ten years imprisonment for each count, to run consecutively. On October 26, 1987, he was rearrested on a violation of parole warrant and on November 18, 1987 he was returned to confinement. He was re-paroled on May 6, 1988 and early terminated from parole on August 6, 1993.

In accordance with section 4A1.1(a) of the sentencing guidelines, in calculating a defendant's criminal history category, three points are added for each prior sentence of imprisonment exceeding one year and one month. Clearly, the bank robbery convictions qualify. Defendant appears to argue that the bank robbery convictions were too remote in time to be considered. This issue is addressed in § 4A1.2(e)(1), which provides that:

> Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

The time frame of the conspiracy charged in the indictment was July 1, 2002 through August 31, 2003. (Doc. 1). Count two of the indictment charged defendant with committing a specific act in furtherance of the conspiracy, possession with intent to distribute cocaine, on July 26, 2002. Thus, defendant's participation in the conspiracy began no later than this date. Defendant's May 6, 1988 release from prison was within fifteen years of this date, and the three criminal history points were properly counted. See *United States v. Shannon*, 449 F.3d 1146, 1148 (11th Cir. 2006) (a sentence that is imposed outside the fifteen year window and on which the defendant is paroled is counted under § 4A1.2(e) if the defendant is re-incarcerated for breaching the conditions of his parole inside the fifteen year window) (citing *United States v. Cornog*, 945 F.2d 1504, 1507 (11th Cir. 1991)); *see also United States v. Gordon*, 203 Fed. Appx. 318 (11th Cir. 2006). Counsel is not ineffective for failing to preserve or argue a meritless claim. *See Brownlee*

*v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue). Thus, defendant is not entitled to relief.

### 3. Consideration of Prior Convictions

In grounds two and three defendant maintains that the court should have sentenced him more leniently because he has been a law abiding citizen for two decades after his release from his prior term of incarceration. As such, he argues that the court should not have considered his prior convictions in imposing sentence. Defendant's argument here ignores the fact that the sentence he received was the absolute minimum he could have received under the law considering the circumstances of this case. Prior to imposing sentence, the court did make note of the fact that the defendant had apparently been a law abiding citizen for many years, and that it would take this into account if a Rule 35 motion were filed, but that for its purposes in sentencing, it was left with "little choice." (Doc. 40 at 9). Defendant makes an impassioned plea in his reply for the hardship that his sentence has imposed on his family. However, there was and is no legal basis for a lesser sentence, and defendant has not established that he is entitled to relief.

### 4. Quantity of Drugs Attributed to Defendant

Defendant appears to contend that the government "raised the amount" of drugs for which he was held accountable to "put him in the 120 month range." However, his own admission at the plea proceeding that the offense conduct involved 6 kilograms of cocaine, was enough to qualify him for the statutory minimum mandatory. The record reflects no impropriety with respect to the quantity of drugs attributed to him, and this claim is without merit.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 32) be DENIED.

At Pensacola, Florida, this 4th day of October, 2007.

/s/ Miles Davis
**MILES DAVIS
UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).